# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**DWAYNE ROLAND BRIDGET**                                                **PLAINTIFF**

**VERSUS**                                          **CIVIL ACTION NO. 5:18-cv-6-MTP**

**JUSTIN GREEN,** *et al*.                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Motion [45] for Summary Judgment filed by Defendants Pelicia Hall, Richard Pennington, Pamela C. Robinson, and Marilyn Sturdivant along with Motion [53] for Summary Judgment filed by Defendants Latoya Burden, Justin Green, and MTC. Having carefully considered the parties' submissions and the applicable law, the Court finds that Motion [45] should be granted and Motion [53] should be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a post-conviction inmate in the custody of the Mississippi Department of Corrections. Plaintiff filed this civil-rights lawsuit on January 8, 2018 and the Court held a *Spears*[1] hearing to clarify Plaintiff's claims on October 4, 2018. Plaintiff testified at the hearing and stated that the events he complained of occurred at the Mississippi State Penitentiary (Parchman) and Wilkinson County Correctional Facility (WCCF).

Plaintiff alleges that while incarcerated at Parchman in 2013 he was improperly placed on lockdown due to a false report. This occurred because Defendant Marilyn Sturdivant filed an allegedly false administrative designation recommendation regarding Plaintiff's custody—classifying him as dangerous. Plaintiff claims that Defendant Pamela Robinson violated his due

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

process rights by placing him in long-term administrative segregation. In relation to this incident, Plaintiff also sued Defendant Richard Pennington for failing to adequately investigate Plaintiff's grievances filed through the prison's administrative remedy program (ARP) and Defendant Pelcia Hall because he wrote her about this issue, and she ignored him.

Plaintiff was later transferred to WCCF. On September 11, 2017, while incarcerated at WCCF, an unknown person emptied a fire extinguisher into Plaintiff's cell. Plaintiff told Captain Justin Green about the fire extinguisher and how he needed medical attention, but Green ignored him. Plaintiff then filed a grievance via the prison's administrative remedy program.

Plaintiff also alleges that on September 13, 2017, he had a physical altercation with Defendant Green. Plaintiff was taking a shower when Green and Lieutenant Young, who is not a named defendant, approached him and wanted to search his cell. Green and Young then searched Plaintiff's cell, repeatedly hit him, dragged him on the stairs, and yelled racial slurs at him. As a result of this assault, Plaintiff allegedly sustained injuries to his face and a chipped tooth.

On September 26, 2017, Plaintiff had an asthma attack. A nurse checked his oxygen and recommend that he go to the medical unit for a breathing treatment. Allegedly, Defendant Latoya Burden refused to take Plaintiff for treatment. Burden then ordered Plaintiff to close his tray hole, but he refused. In response, two cans of mace were emptied into Plaintiff's cell. Burden then cut off the water to Plaintiff's cell so he could not clean the mace off of his body. The chemicals on his body caused pain and hair loss.

Defendants Pamela C. Robinson, Marilyn Sturdivant, Pelcia Hall, and Richard Pennington filed their Motion [45] for Summary Judgment. Plaintiff did not respond to Motion [45]. Additionally, Defendants Latoya Burden, Justin Green, and MTC filed a Motion [53] for

2

Summary Judgment. Plaintiff did file a Response [56] is opposition to Motion [53]. Both motions are now ripe for review.

## ANALYSIS

***Summary Judgment Standard***

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). The Court must view the evidence in the light most favorable to the non-moving party. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, … since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

***Motion [45] for Summary Judgment***

Defendants Hall, Robinson, Sturdivant and Pennington moved for summary judgment on all claims brought against them. Mot. [45]. Plaintiff did not respond to the motion.

3

*Official Capacity Claims*

Defendants Hall, Robinson, Sturdivant, and Pennington argue that they are entitled to summary judgment on any claim brought against them in their official capacity. These Defendants are employed by MDOC, which is an arm of the State. Claims brought against defendants in their official capacity are essentially claims brought against the State, and "[t]he Eleventh Amendment bars suits in federal court against a state, or one of its agencies or departments, by anyone other than the federal government or another state." *Decker v. Dunbar*, 358 Fed. App'x 509, 2009 WL 5095139 at *1 (5th Cir. 2009).[2]

Without a waiver, the State and its agencies are not subject to suit in federal court due to the protections of the Eleventh Amendment. *Cox v. Texas*, 354 Fed. App'x 901, 902 (5th Cir. 2009). Mississippi has not waived its immunity in this instance. *See* Miss. Code Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the Untied States.") Moreover, State employees acting within their official capacities are not "persons" under 42 U.S.C. § 1983— the vehicle for Plaintiff's claims. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Ingle v. Pace*, 744 Fed. App'x 883, 884 (5th Cir. 2018). Therefore, to the extent Plaintiff has brought claims against Hall, Robinson, Sturdivant, and Pennington in their official capacities, summary judgment should be granted in Defendants favor.

---

[2] There is an exception to Eleventh Amendment immunity if a plaintiff seeks injunctive relief relating to a violation of federal law, but it does not apply in this case because Plaintiff has not asserted any constitutional violations on the part of the defendants employed by the State. *McKinley v. Abbot*, 643 F.3d 403, 406 (5th Cir. 2011).

*Individual Capacity Claims*

Defendants Hall, Robinson, Sturdivant, and Pennington also argue that they are entitled to summary judgment because Plaintiff's claims are barred by the statute of limitations. Plaintiff did not respond to this argument. In Section 1983 actions, courts look to the law of the state in which the cause of action arose to determine the applicable statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). Specifically, courts look to a state's statute of limitations for personal-injury torts. *Id.*; *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Mississippi, the applicable statute of limitations is three years. *Edmonds v. Oktibbeha Cnty., Miss.*, 675 F.3d 911, 916 (5th Cir. 2012) (citing Miss. Code Ann. § 15-1-49).

"The accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace*, 549 U.S. at 388. The Fifth Circuit has held that "the statute of limitations under § 1983 begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Edmonds*, 675 F.3d at 916 (internal quotations and citation omitted).

Plaintiff sues Defendant Sturdivant because she allegedly created a false administrative designation report, and he sues Defendant Robinson because she improperly placed Plaintiff in long-term segregation.[3] Plaintiff testified that the false report was created in October of 2013 and he was placed in long-term segregation as a result of the false report. Omnibus Hearing Transcript [45-1] at 37, 49. Plaintiff was aware of his claims against Defendants Robinson and Sturdivant in 2013 when the false report was created, and he was recommended for long-term

---

[3] While Plaintiff discussed a myriad of records and incidents at the omnibus hearing, he claims that at one point he was attacked by four other inmates and was forced to defend himself. He was disciplined for his actions in that altercation, even though he was not the aggressor, because Defendant Sturdivant created a false report about the incident. This led Defendant Robinson to improperly place Plaintiff in long-term segregation.

5

segregation. Therefore, the statute of limitations ran on these claims by October 2016, but Plaintiff did not file this lawsuit until January 8, 2018. Under the applicable three-year statute of limitations, Plaintiff's claims against Defendants Robinson and Sturdivant are barred and summary judgment should be granted in their favor.

Defendants Hall and Pennington also move for summary judgment under the statute of limitations on the claims that they did not investigate or ignored Plaintiff's grievances. It is not clear, however, from the record when Plaintiff contacted them and his claims against them accrued. Therefore, the Court will not grant summary judgment in favor of Defendants Hall and Pennington on the grounds that the statute of limitations had expired.

*Qualified Immunity*

Defendants Hall and Pennington also move for summary judgment for any claims brought against them in their individual capacities under the doctrine of qualified immunity. "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A qualified immunity analysis requires a court to consider two questions: (1) has the plaintiff alleged a constitutional violation and (2) was that constitutional right clearly established at the time of the defendant's alleged conduct? *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (maintaining the two-step inquiry relating to qualified immunity but giving district courts the discretion to address the questions in the order that is most efficient.) Plaintiff has not responded to Defendants' qualified immunity arguments.

6

1. Richard Pennington

Plaintiff complains that Defendant Pennington did not adequately investigate the grievances he filed. Plaintiff, however, does not have a constitutional right to have his grievances processed to his satisfaction or investigated. *Geiger v. Jones*, 404 F.3d 371, 374 (5th Cir. 2005). "[A]n alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless." *Hill v. Walker*, 718 Fed. App'x 243, 250 (5th Cir. 2018) (internal quotations and citation omitted). Plaintiff has not alleged a constitutional violation on the part of Defendant Pennington and summary judgment should be granted in Pennington's favor.

2. Pelicia Hall

Plaintiff sues Defendant Hall, the Commissioner of MDOC, because he allegedly wrote her letters about the aforementioned conduct of prison officials and she did not respond to him. Again, Plaintiff has not stated a constitutional claim.

First, Hall cannot be held liable for the actions of other MDOC employees under 42 U.S.C. § 1983. "Supervisory officials cannot be held liable under section 1983 for the actions of subordinates…." *Estate of Davis ex rel. McCully v. City of N. Richland Hills Police*, 406 F.3d 375, 381 (5th Cir. 2005). Second, Hall did not violate Plaintiff's constitutional rights by failing to respond to his communications or investigate his claims. Prison officials are not constitutionally bound to respond to letters from prisoners, and an inadequate investigation of issues raised in such letters does not amount to a constitutional violation. *Campbell v. Dykes*, 2019 WL 2518153, at *4 (S.D. Miss. Mar. 18, 2019); *see also Charles v. Nance*, 186 Fed. App'x 494, 495 (5th Cir. 2006) (holding that a prison's failure to investigate plaintiff's grievance failed to assert a due process violation). For these reasons, Plaintiff has not asserted a constitutional violation on the part of Defendant Hall and summary judgment should be granted in her favor

*Motion [53] for Summary Judgment*

<u>*Defendant Green*</u>

Plaintiff sued Justin Green for denying him medical care and using excessive force against him. Green argues he is entitled to summary judgment on both claims.

1. Denial of Medical Care

Plaintiff testified that on September 11, 2017, he repeatedly set fires in his cell to get the attention of the officers on duty. Plaintiff claims he was suffering from breathing issues, chest pains, and vomiting. The officers on duty, who are not parties in this lawsuit, used fire extinguishers to put out the fires but did not take Plaintiff to the medical unit for treatment. On September 12 or 13, Plaintiff communicated to Defendant Green what occurred on September 11 and reiterated his need for medical attention and how the fire extinguisher irritated his skin. Defendant Green did not take Plaintiff to the medical unit.

At some point on September 13, Plaintiff was taken to the medical unit after a separate incident involving Defendant Green. The medical records reflect that Plaintiff was only treated for a "superficial scratch" to the forehead, which was cleaned with water. *See* [53-4] at 4.[4] Defendant Green moves for summary judgment on this issue and argues that Plaintiff did not suffer any harm as a result of any delay in receiving medical treatment.[5]

"In order to show that his medical care violated the Eighth Amendment, [the plaintiff] must allege that prison officials were deliberately indifferent to his serious medical needs.

---

[4] The records from that day also note that Plaintiff complained of redness on his wrists and a soreness on his thigh, but he did not need medical treatment for these minor ailments.

[5] While the Court acknowledges that Defendant Green did not take Plaintiff to the medical unit, and Plaintiff was only taken to the medical unit after a physical altercation with Defendant Green, the question still remains whether Plaintiff suffered any substantial harm from the one-day delay in medical care.

8

Deliberate indifference encompasses only unnecessary and wanton infliction of pain." *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997). "To state a claim for a civil rights violation resulting from delayed medical attention, a plaintiff must demonstrate that [he] suffered a substantial harm resulting from the delay." *Campbell v. McMillin*, 83 F. Supp. 2d 761, 766 (S.D. Miss. 2000) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

At the earliest, Plaintiff spoke with Defendant Green about receiving medical care on September 12 and the medical records reflect that Plaintiff was seen by medical staff at WCCF on September 13. During that September 13 visit, Plaintiff was only treated for a superficial cut on his forehead. *See* [53-4] at 4. Nothing from that medical visit indicates that Plaintiff was suffering from breathing problems, chest pains, or skin irritation.

These records do not show that Plaintiff suffered a substantial harm because he presented to the medical unit, a day after he requested medical treatment from Defendant Green, with only one cut. Plaintiff has not submitted any other evidence regarding the health issues he complained about to Defendant Green. Even assuming that Defendant Green delayed Plaintiff's access to medical care, Plaintiff has not shown that he suffered a substantial harm from this delay and summary judgment should be granted to Defendant Green on this issue.

2. Excessive Force

Plaintiff also sues Defendant Green for an alleged use of excessive force in violation of the Eighth Amendment. To state an Eighth Amendment excessive force claim, "a prisoner… must show that force was applied not in a good faith effort to maintain or restore discipline, but rather that the force complained of was administered maliciously and sadistically to cause harm." *Rankin v. Klevenhagen*, 5 F.3d 103, 107 (5th Cir. 1993) (internal quotations and citation omitted). To determine the nature of the force applied, the Court should consider several factors:

"(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Id*. at n. 6. The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, *2 (5th Cir. Feb. 21, 2001) (quotations and citation omitted).

Plaintiff claims that Green and another correctional officer searched his cell while he was taking a shower on September 13, 2017. Plaintiff got out of the shower, and Green and the other officer yelled racial slurs at him. Plaintiff was placed in handcuffs, and Green "twisted" the cuffs. Plaintiff concedes that he then dropped to his knees and refused to move. Resp. [56] at 2; *see also* Omnibus Hearing Transcript [53-1] at 46.

Green and the other officer dragged Plaintiff up the stairs. Green then placed Plaintiff in his cell and kicked him repeatedly. Plaintiff claims Green left him on the floor of his cell still in handcuffs and other officers found him later "covered in boot prints and blood." *Id*. at 3.

Green disputes Plaintiff's representation of the facts. He asserts that Plaintiff refused to cooperate while being escorted back to his cell after showering. Plaintiff's non-compliance forced Green to "twist" Plaintiff's handcuffs, so he had better leverage on Plaintiff. By picking him up under each arm, Green and the other officer forcibly carried Plaintiff back to his cell. Green maintains that once inside the cell, he used his outer knee to strike Plaintiff's outer thigh to force Plaintiff to move his legs so the restraints could be safely removed. Green submits that no other force was used and the force that was deployed was done to maintain discipline.

10

Both Plaintiff and Defendant Green agree that Plaintiff was non-compliant after he got out of the shower and refused to get off his knees. The parties disagree about the events that occur after that. Plaintiff claims he was dragged back into his cell and struck in the face. Resp. [56] at 2. Plaintiff alleges that Green then "stomped" and kicked him while his body was half-way under his bed. *Id*. at 3.

Green maintains that the only force used against Plaintiff was a strike to Plaintiff's thigh from Green's knee. This was done to force Plaintiff move his legs in effort to safely remove Plaintiff's restraints. Green asserts that he "applied minimal and reasonable force in a good faith effort to maintain or restore discipline." Memo. [54] at 13. This is in direct conflict with Plaintiff's version of events regarding the amount and type of force used against him. At the summary judgment stage, the Court must construe all facts and inferences in the light most favorable to the Plaintiff. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 175 (5th Cir. 2018).

Green also argues that Plaintiff only suffered a *de minimis* injury. Plaintiff was taken to see a nurse after the incident and the record reflects he was only treated for a cut to his forehead. *See* [53-4] at 4. He also complained of redness on his wrist and soreness on his thigh but did not receive medical attention for these issues. Additionally, he testified that he suffered a chipped tooth and that the tooth has not been repaired. Omnibus Hearing Transcript [51-1] at 23-24. Admittedly, Plaintiff did not suffer extensive injuries. Yet, "[t]he absence of serious injury, while relevant to the inquiry, does not preclude relief." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (citing *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his

ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.")

For these reasons, the Court finds that there is a genuine issue of material fact as to Plaintiff's excessive force claim against Defendant Green. The Motion [53] for Summary Judgment should be denied as to this claim.

*Defendant Burden*

Plaintiff sued Defendant Burden for allegedly denying him medical treatment when he was experiencing an asthma attack and then using excessive force against him by spraying a chemical agent into his cell when he refused to close the tray flap on his cell door. Plaintiff alleges that Burden then turned off the water to his cell and did not allow him to remove the chemicals from his body, which caused some of his skin and hair to fall off. Plaintiff claims this altercation occurred on September 26, 2017.

Defendant Burden argues that she is entitled so summary judgment because Plaintiff did not exhaust his administrative remedies before filing suit. The Prison Litigation Reform Act ("PLRA") mandates that prisoners exhaust all administrative remedies available to them before filing suit. 42 U.S.C. § 1997e(a). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah Cty., Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint… and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the

exhaustion requirement." *Washington v. Brisolara*, 2016 WL 3982504, at *2 (S.D. Miss. July 22, 2016).

An administrative remedy program is in use at WCCF, and Plaintiff was required to comply with the grievance process. *See* Inmate Handbook [53-2] at 7. Prisoners are required to submit their grievances within thirty days of the complained-of incident. *Id*. The incident with Defendant Burden occurred on September 26, 2017, but Plaintiff did not submit his grievance about the interaction until March 20, 2018. *See* ARP [53-9]. The grievance was rejected because it was filed more than thirty days after the incident. *Id*.

Plaintiff has not come forward with any competent summary judgment evidence to show that he exhausted his administrative remedies before filing suit against Defendant Burden. Absent an appropriately filed grievance, submitted within 30 days of the incident, Plaintiff forfeited his opportunity to exhaust his claims against Defendant Burden. *See Hobson v. Fisher*, 2017 WL 1042081 (S.D. Miss. Mar. 17, 2018) (finding Plaintiff's grievance untimely and procedurally defective because it was filed more than thirty days after the incident at issue.) Summary judgment should be granted in Defendant Burden's favor based on Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

## *MTC*

Plaintiff also sues MTC because it operates WCCF and employs some of the defendants who allegedly violated his constitutional rights. MTC argues that it is entitled to summary judgment because it cannot be held vicariously liable. MTC, as a private corporation fulfilling a state function, is not vicariously liable under 42 U.S.C § 1983 "for its employees' deprivations of others' civil rights." *Carpenter v. Mgmt. & Training Corp.*, 2014 WL 4955693, at *3 (N.D. Miss. Oct. 2, 2014) (quoting *Lonoaea v. Corr. Corp. of Am.*, 665 F. Supp. 2d 677, 685 (N.D.

Miss. 2009)). "Rather, a private corporation is only liable when an official policy or custom of the corporation causes, or is the 'moving force' behind the constitutional violation." *Id*. (referencing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

Plaintiff has not come forth with any competent summary judgment evidence to show that MTC has a policy or custom that was the moving force behind any alleged constitutional violation. In his Response [56], Plaintiff argues, "MTC provides corrections supervision services at WCCF pursuant to a contract with MDOC and… MTC should be held responsible when their staff breach that contract and administration knowingly violate federally protected rights…." Resp. [56] at 1. This bare assertion does not state with any specificity what policies are knowingly implemented by MTC that lead to constitutional deprivations. Plaintiff's claim against MTC is without merit and summary judgment should be granted in MTC's favor.

IT IS, THEREFORE, ORDERED:

1. The Motion [45] for Summary Judgment filed by Defendants Hall, Pennington, Robinson, and Sturdivant is GRANTED. These Defendants are dismissed with prejudice.

2. The Motion [53] for Summary Judgment is DENIED IN PART as to the claim against Defendant Green for excessive force.

3. The Motion [53] for Summary Judgment is GRANTED IN PART as to all other claims. Defendant Burden and MTC are dismissed with prejudice. The claim against Defendant Green for denial of medical care is dismissed with prejudice.

SO ORDERED, this the 16th day of September, 2019.

/s/Michael T. Parker
United States Magistrate Judge